**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALEX VERBOIS, JR.** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 18-629-RLB[1]** |
| **NANCY A. BERRYHILL**<br>**ACTING COMMISSIONER OF**<br>**SOCIAL SECURITY** | |

**RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL**

Alex Verbois, Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-7), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

**I.    Procedural History**

Plaintiff filed his application for disability insurance benefits (Tr. 161-166) on September 14, 2015, alleging that he became disabled on August 30, 2014 because of a disabling condition, namely bipolar disorder, schizophrenia, and manic depression (Tr. 189). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 11), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

hearing (Tr. 36-61) before issuing an unfavorable decision on March 14, 2017. (Tr. 17-35). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 25, 2018. (Tr. 1-7). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. Standard of Review

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the

record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ's Determination

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

3

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had not engaged in substantial gainful activity since August 5, 2015, the amended alleged onset date.[2]
2. Plaintiff had the following severe impairments: anxiety, ADHD, and affective disorder.
3. Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing.
4. Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the following non-exertional limitations: he is capable of understanding, remembering and carrying out simple and routine tasks; low stress jobs, defined as requiring only occasional decision making and occasional changes in the work setting; and work that is essentially isolated, with no interaction with the general public and co-workers and only occasional interaction with supervisors.
5. Plaintiff was unable to perform past relevant work.
6. Plaintiff was born on June 24, 1976 and was 39 years old, which is defined as a younger individual age 18-49, on the amended onset date.
7. Plaintiff had at least a high school education and was able to communicate in English.
8. Transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff was not disabled, whether or not he had transferable job skills.
9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

---

[2] Plaintiff amended his alleged onset date to August 13, 2015 in correspondence dated January 27, 2017, based on his position that the "record now reveals chronic intermittent and at times, acute symptoms since 8/13/15 despite full compliance with treatment." (Tr. 525). The beginning of the ALJ's decision references the amended date. (Tr. 25).

4

## IV. Law and Analysis

In support of his appeal, Plaintiff argues that the ALJ should have concluded that Plaintiff met or medically equaled §§ 12.04 and 12.06 of the Listings, specifically with regard to the paragraph B criteria. (R. Doc. 17 at 2). Plaintiff asserts that the evidence supports marked limitations in his ability to interact with others and his ability to concentrate, persist, or maintain pace such that the paragraph B criteria have been met. (R. Doc. 17 at 10). Plaintiff also asserts that, even if substantial evidence supports the ALJ's finding that "there is insufficient evidence of two marked or one extreme limitation in any domain," Plaintiff's impairment medically equals either Listing 12.04 or 12.06." (R. Doc. 17 at 10).

The ALJ concluded that Plaintiff's anxiety, ADHD, and affective disorder were severe, but that he did not have an impairment or combination of impairments that meets or medically equals a Listing, giving specific consideration to §§ 12.04 and 12.06. (Tr. 22). In so finding, the ALJ reviewed the requirements of Listings 12.04 and 12.06, finding that Plaintiff had met the "A" criteria of both listings, but that there was insufficient evidence supporting the "B" criteria. (Tr. 24). The questions before the Court are (1) whether substantial evidence supports the ALJ's finding that Plaintiff had not met the Paragraph B criteria of Listings 12.04 or 12.06; and (2) whether the ALJ committed legal error when he found Plaintiff had not medically equaled a listing.

### A. Paragraph B Criteria

The Paragraph B Criteria of Listings 12.04 and 12.06 require an ALJ to find an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning:

1. Understand, remember or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

5

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04(B) and 12.06(B). The ALJ concluded that Plaintiff had only moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (Tr. 24-25). Plaintiff "specifically contends that the evidence supports at least marked limitations in 1) interact with others and 2) concentrate, persist or maintain pace." (R. Doc. 17 at 10). Insofar as interacting with others is concerned, Plaintiff suggests an inherent conflict between the ALJ's moderate limitation at Step 3 and his RFC assessment limiting Plaintiff to "work that is essentially isolated with no interaction with the general public and co-workers." (R. Doc. 17 at 12; Tr. 24-25).

The core of Plaintiff's argument is that the ALJ ignored "the vast majority of marked and extreme symptomatic periods and objective MSE findings, instead relying on a few instances of improvement." (R. Doc. 17 at 14). That is to say, Plaintiff suggests that, had the ALJ considered the evidence of "marked and extreme symptomatic periods and objective MSE findings," he should have concluded Plaintiff met Listing 12.04 or 12.06 based on an extreme limitation in one or marked limitation in two of the four areas of functioning. The question before the Court is not whether, based on an independent review of the record, the Court would draw a different conclusion, but rather whether substantial evidence supports the findings of the ALJ. If it is clear the ALJ ignored evidence, or unclear whether the ALJ considered certain evidence, remand may be warranted. If, on the other hand, the ALJ considered all of the relevant evidence, weighed that evidence following the proper guidelines, and drew a conclusion upon which the Plaintiff disagrees, remand is not warranted.

In his Listing analysis, the ALJ cites the requirements for Listings 12.04 and 12.06, then states, "[b]ased on the whole of the record, as discussed more fully below, the undersigned finds that the claimant has moderate limitations in understanding, remember, or applying information;

6

in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself," ultimately concluding Plaintiff had not met the Paragraph B criteria of either Listing. (Tr. 24-25). The Regulations do not require an ALJ to cite or reference every single piece of evidence or medical finding that he has reviewed when reaching his conclusion. Rather, so long as the ALJ has provided the Court enough information to conclude he has considered all of the relevant evidence in accordance with the Regulations, his decision will not be reversed for failure to draw a different conclusion suggested by Plaintiff.

Plaintiff suggests that the May 15, 2017 report of Dr. Ahmed supports a finding of extreme limitation in his ability to interact with others. (R. Doc. 17 at 12-13). This report was submitted by Plaintiff's counsel on March 24, 2017, shortly after the ALJ's March 17, 2017 decision was rendered, and asks Dr. Ahmed to respond to specific inquiries as a result of a denial of Plaintiff's disability claim. Therefore, this report was not before the ALJ such that it cannot be said to constitute error that the ALJ did not consider it. A review of the decision of the Appeals Council indicates that Plaintiff submitted records from Rosenblum Behavioral Health dated December 13, 2016 to May 15, 2017, which would presumably include this report. (Tr. 2). The Appeals Council then concludes that the additional "evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). As Dr. Ahmed's response to Plaintiff's counsel's inquiry post-dated the ALJ's decision and was considered and rejected by the Appeals Council, having found it not likely to change the outcome, it is not a basis under which to overturn the ALJ's decision. As the Appeals Council notes, should Plaintiff want the Administration "to consider whether you were disabled after March 17, 2017, you need to apply again." (Tr. 2).

Even were Dr. Ahmed's May 15, 2017 responses to be considered, the written explanations of his responses call into question the findings of extreme limitations. An extreme

7

limitation in mental functioning is represented by an individual who is "not able to function in this area independently, appropriately, effectively and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e). The comments provided by Dr. Ahmed accompanying his responses to Plaintiff's inquiry indicate Plaintiff has some difficulty in the areas of interacting with others and his ability to concentrate, persist or maintain pace, but not an inability to do so. Dr. Ahmed states that Plaintiff "experienced significant trauma in the past, especially when having negative interactions with authority figures" and that Plaintiff "does not handle conflict well and has very poor emotional regulation," and also that Plaintiff has "significant difficulty with focus and concentration," as opposed to an inability. (Tr. 63). Thus, although Dr. Ahmed checked the "extreme limitation" box on the questionnaire, his explanations contradict this finding such that, even were the report to be considered, a finding of extreme limitation is not substantially supported.

Also in support of his argument that the record supports extreme limitations in his ability to interact with others, Plaintiff cites to various portions of his Adult Function Report (Tr. 407), and Exhibits 2F (Tr. 296), 3F (Tr. 396, 398-99, 403-04), 8F (Tr. 435, 441-42, 444, 448), 11F (Tr. 472), 13F (Tr. 490-91, 496-97, 501-02, 508), 14F (Tr. 511), 16F (Tr. 520-22), suggesting that the "ALJ either neglects to mention or minimizes this evidence." (R. Doc. 17 at 13). The Court's review of the ALJ's decision indicates that the ALJ did, in fact, review and consider each of these exhibits, even referencing information on the same page in some instances. (*See* Tr. 26-30, citing Exhibits 2F, 3F, 8F, 11F, 13F, 14F, and 16F).[3]

---

[3] For example, Plaintiff cites page 11 of Exhibit 11F as part of the ALJ's alleged failure to account for observed paranoia, anger, isolation, while the ALJ cites the same page for "unchanged symptoms except that fatigue had increased and he was restless and fidgety. (*Compare* R. Doc. 17 at 13 *with* Tr. 27). Similarly, Plaintiff cites page 472 of Exhibit 11F for the ALJ's alleged failure to account for Plaintiff's impulsivity, while the ALJ references the same page for Plaintiff being "partially improved." (*Compare* R. Doc. 17 at 13 *with* Tr. 28).

The same is true with regard to Plaintiff's contention that the ALJ failed to consider evidence of extreme limitations in his ability to concentrate, persist, or maintain pace. (R. Doc. 17 at 14, citing Exhibits 3F, 8F, 11F, and 12F). The ALJ discussed specific portions of each of these records, indicating his review and consideration of same. For example, Plaintiff argues that "[a] prior [medical] opinion assessed a marked limitation" in Plaintiff's ability to concentrate, persist, or maintain pace. (R. Doc. 17 at 14, citing page 4 of Exhibit 12F). The ALJ discussed this record, and indeed this page of the record, including the specific explanation the provider assessed a marked limitation in this area. (Tr. 28) ("He has marked impairment in ability to complete tasks in a timely manner, which the social worker noted is due to difficulty with focus and coping with pressure and deadlines.").

That the ALJ did not cite or give more weight to the portions of the medical records specifically highlighted by Plaintiff in his brief is not an indication that the ALJ failed to consider all of the relevant evidence in accordance with the Regulations, but rather that the ALJ did not give as much weight to that evidence as Plaintiff would have preferred. Such is not a basis for remand.

Furthermore, substantial evidence supports the ALJ's finding of only moderate limitation in the areas of Plaintiff's ability to interact with others and concentrate, persist, or maintain pace. Insofar as interacting with others is concerned, at his January 6, 2016 consultative examination with Dr. Van Hook, it was reported that Plaintiff's "ability to respond appropriately to supervision and interact appropriately with others was adequate," though he possessed "poor conflict resolution skills" with otherwise adequate social judgment. (Tr. 428). In 2016, Plaintiff reported living with and taking care of his parents. (Tr. 493). At times, Plaintiff's relationship with friends and family were reported to be reduced, while at other times normal, indicating less than extreme or marked ability to interact with others. (*Compare* Tr. 396, 432, 469, and 472 *with*

9

Tr. 322, 326, 338, 340, 342, 364, 404, 475). He was also most often reported to be friendly and cooperative at appointments, indicating an ability to interact with others. (Tr. 340, 342, 396, 403, 432, 441, 457, 460, 466, 469, 472, 476, 491, 493, 504, 512, 515). Plaintiff represented to Dr. Michalewicz that he "[f]eels better when [he] interacts with supportive people" at a March 30, 2016 appointment. (Tr. 479).

Plaintiff reported at a March 26, 2014 appointment that he lost an "internship" at a tattoo parlor because he punched his boss and best friend. (Tr. 302). At a more recent incident at the DMV, Plaintiff was able to control his anger and impulse by walking away from the situation, as Plaintiff reported at his September 14, 2016 appointment that "he was enraged and was about to exhibit poor impulse control with the worker, but became mindful of the negative consequences when he thought of such and left." (Tr. 496). Plaintiff also reported an incident at his August 26, 2013 appointment wherein he wanted to hit a man who hit his car, but he was "proud of himself for not acting out physically." (Tr. 316).

Overall, viewing the record as a whole, substantial evidence supports the ALJ's finding of only moderate limitations in Plaintiff's ability to interact with others. Although there are instances of difficulties regarding Plaintiff's ability to interact with others, which have been reviewed by the Court, there are also numerous instances of success in his interaction with others, and strong relationships with family and friends. The evidence of Plaintiff's difficulties in the workplace or with authority figures was accounted for in the ALJ's RFC assessment, where he was limited to work that is essentially isolated, with no interaction with the general public and co-workers and only occasional interaction with supervisors. (Tr. 25). Based on the record, Plaintiff had little difficulty interacting with his family and friends, even maintaining a positive relationship with his ex-wife (Tr. 281, 340, 342), such that his general ability to interact with

others is not seriously limited, but his specific challenges are considered and weighed accordingly in the RFC assessment.

Substantial evidence also supports the ALJ's conclusion that Plaintiff had only moderate limitations in his ability to concentrate, persist, or maintain pace. Dr. Van Hook found Plaintiff's concentration to be "adequate for days of the week backwards, mental computations, and serial digits," his memory to be intact, and his persistence to be adequate. (Tr. 427). Plaintiff often reports difficulties with concentrating and finishing tasks, but there is no evidence of treatment for an attention disorder that would be warranted by significant limitations in this area. At his December 13, 2016 appointment with Dr. Ahmed, it was reported that a "normal attention span is in evidence and there are no signs of hyperactivity." (Tr. 78). In his March 13, 2017 appointment with Dr. Ahmed, the records of which were not before the ALJ, Plaintiff reported that he was "doing okay," that he had a landscaping job, and was also working on his father's house. (Tr. 65). Normal attention span and/or an absence of signs of hyperactivity were noted at several points throughout his records. (Tr. 396, 403, 432, 438, 448, 457, 460, 479, 488, 499).

### B. <u>Medical Equivalence</u>

In addition to the ALJ's finding with regard to the Paragraph B criteria, Plaintiff argues that the ALJ failed to address medical equivalence. At Step 3, the ALJ stated that, "[b]ased on the whole of the record, as outlined and discussed in detail below, the undersigned finds that the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, and 12.06." (Tr. 22).

Plaintiff submits that, because "the ALJ found that Plaintiff had a combination of impairments which met the A criteria of two Listings and which resulted in a moderate impairment in all 4 of the functional domains… the ALJ was required to consider whether his

findings were 'at least' of equal medical significance," suggesting that the ALJ "offered no rationale as to why Plaintiff did not equal the Listings." (R. Doc. 17 at 11).

20 C.F.R. § 404.1526(b) provides the following relevant manner in which an ALJ can find medical equivalence:

(1)(i) If you have an impairment that is described in appendix 1, but –

(A) You do not exhibit one or more of the findings specified in the particular listing, or

(B) You exhibit all of the findings but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

In support of his argument, Plaintiff suggests that the ALJ's finding of moderate impairment in all four of the functional domains "raise the issue of medical equivalence to the Listing(s)." (R. Doc. 17 at 10). Rather than pointing the Court to "other findings related to [his] impairment that are at least of equal medical significance to the required criteria," Plaintiff seems to suggest that, because the ALJ found moderate impairment in all four of the functional domains, he should have concluded that Plaintiff medically equaled Listing 12.04 and/or 12.06. Plaintiff does not, however, provide any support for the idea that moderate impairment in all four of the functional domains necessitates a finding of medical equivalence to the Listing. The Court finds this argument to be without merit.

Plaintiff also seems to implicate the third manner in which the Administration provides for a finding of medical equivalence, arguing that the ALJ failed to properly consider medical equivalence based on Plaintiff's combination of impairments. (R. Doc. 17 at 11) ("Here, the ALJ found that Plaintiff had a combination of impairments which met the A criteria of two Listings and which resulted in a moderate impairment in all 4 of the functional domains. Thus, per the

law cited above [§ 404.1526(b)(B)(2)-(3)], the ALJ was required to consider whether his findings were 'at least' of equal medical significance and if so, 'we will find that your combination of impairments is medically equivalent to that Listing.'")). Plaintiff does not point to any medical evidence that the ALJ did not consider, however, but rather argues that the ALJ should have drawn a different conclusion after reviewing the evidence he did consider, particularly with regard to Plaintiff's ability to interact with others and his ability to concentrate, persist or maintain pace. (R. Doc. 17 at 11-15).

"On judicial review it is not the court's function to reweigh the evidence and make its own findings. As long as the ALJ applied the correct legal standards, considered all the evidence and his conclusions are supported by substantial evidence these findings must be upheld." *Devall v. Astrue*, 2010 WL 5624639, at *3 (M.D. La. Dec. 27, 2010), *report and recommendation adopted*, 2011 WL 204792 (M.D. La. Jan. 20, 2011). Plaintiff's argument that he medically equaled a Listing is commingled with his argument that he met Listings 12.04 and 12.06 such that, to the extent the Court has addressed those arguments in the preceding section, they are incorporated herein.

Plaintiff suggests that there is an "apparent contradiction" in the ALJ's finding that Plaintiff's ability to interact with others is moderately impaired at Step 3, but that Plaintiff was limited to "work that is essentially isolated with no interaction with the general public and co-workers" in his RFC assessment. (R. Doc. 17 at 11-12). Contrary to the Plaintiff's assertion, the Regulations explicitly state that an "adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found

13

in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The inquiries and analyses at the listing stage and the RFC stage are distinct, and the Court will not venture to compare the two as there is no authority for doing so. The ALJ applied the proper legal framework at each stage, and his findings are supported by substantial evidence.

The remainder of Plaintiff's argument centers around the medical evidence Plaintiff believes should have directed the ALJ's conclusions, which Plaintiff mistakenly labels as the ALJ "ignor[ing] the vast majority of market and extreme symptomatic periods and objective MSE findings, instead relying on a few instances of improvement." (R. Doc. 17 at 14). The Court disagrees, and instead finds that the ALJ considered all of the relevant evidence, based in part on the detailed review set forth in his decision. (Tr. 26-30). The ALJ's review includes Plaintiff's testimony regarding his ability to focus and interact with others (Tr. 26), specific references to challenging situations encountered by Plaintiff, including the incident at the DMV (Tr. 26, 28, 29) and the incident with his friend at the tattoo shop wherein Plaintiff hit him (Tr. 26). The ALJ's review also includes the objective medical records from 2011 through January 2017. (Tr. 26-30).

"For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council." 20 C.F.R. § 404.1526(e)(3). Furthermore, a claimant "cannot qualify under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Walton v. Astrue*, 2011 WL 195975, at *6 (N.D. Tex. Jan. 20, 2011) (citing *Carrillo v. Astrue*, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010). An ALJ is not required to cite every single piece of medical evidence considered when reaching his conclusion. *See, e.g., Castillo v. Barnhart*, 151 Fed. App'x 334, 335 (5th Cir.

14

2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). To do so would be exhaustive and duplicative of the medical record itself. Instead, the ALJ has a responsibility to discuss the evidence pertinent in reaching his conclusions in a manner sufficient to indicate on review that the ALJ has considered all of the relevant medical evidence. That is to say, the particular evidence cited in an ALJ's decision is not indicative of the universe of evidence considered by an ALJ.

Here, the Court is satisfied that the ALJ reviewed and considered all of the objective medical evidence before him and, accordingly, Plaintiff's suggestion that the ALJ erred in not considering medical equivalence is unwarranted.

**V.       Conclusion**

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 20, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**